## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9492 | **DATE** | 11/9/2004 |
| **CASE TITLE** | Simmons vs. Dept. of Central | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment (R. 25-1) is granted. Defendant's motion to strike (R. 44-1) is denied as moot. Status hearing set for 12/1/04 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 10 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | 46 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TH ✓ | courtroom deputy's initials | 2004 NOV -9 PM 6:17 U.S. DISTRICT COURT | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOROTHY SIMMONS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DEPARTMENT OF CENTRAL MANAGEMENT )<br>SERVICES, )<br>)<br>Defendant. ) | No. 02 C 9492<br><br>**DOCKETED**<br>NOV 1 0 2004 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Dorothy Simmons claims that Defendant Department of Central Management Services of the State of Illinois ("CMS") failed to promote her based on her sex and retaliated against her for filing a charge of discrimination. Defendant moves for summary judgment. As detailed below, the undisputed facts demonstrate that Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's motion for summary judgment is granted.

## FACTUAL BACKGROUND[1]

### I. Plaintiff's Employment With Central Management Services

#### A. Central Management Services

Created in 1984, CMS is responsible for drafting, disseminating, collecting and reviewing bids and applications for promotions and promotional grades for the government employees of all of the state's agencies as well as for its own employees. (R. 37-1, Pl.'s Resp. to

---

[1] Defendant has submitted a motion to strike paragraphs 7, 18, 20, 70, 72, 73, 79, 80 and 96 of Plaintiff's Add'l Stmt. of Facts Pursuant to Local Rule 56.1. Plaintiff also moves the Court to strike those portions of Chris Valentine's affidavit where he testified to matters outside of his personal knowledge. Those portions of Mr. Valentine's affidavit and either party's statement of facts that are irrelevant, contain hearsay, lack foundation, lack factual support, and are not based on personal knowledge are not considered here.

Def.'s Stmt. of Facts ¶¶ 13, 33.) CMS also has its own police force responsible for patrolling and policing various properties owned and maintained by the State of Illinois. (*Id.* at ¶ 21.) In Chicago, Illinois, the CMS police force polices the James R. Thompson Center ("JRTC") and the State of Illinois Building (now the Bilandic Building) among other sites. (*Id.* at ¶ 22.) In 2001, the available ranks on the CMS police force included Police Officer I, Police Officer II, Police Officer III, Lieutenant, Deputy Chief, and Chief. (*Id.* at ¶ 26.)

### B. Plaintiff Dorothy Simmons

Plaintiff started working for the State of Illinois in 1971 with the Department of Mental Health ("DMH") in a clerical position. (R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 32.) In 1984, when the DMH police merged into the newly created CMS, Plaintiff began working as a Clerk-Stenographer III. (*Id.* at ¶ 33.) In 1993, Plaintiff applied for a police officer position with the CMS police force. (*Id.*) After CMS accepted her application, she trained for a year and became a Police Officer I on May 1, 1994. (*Id.* at ¶ 36; R. 25-1, Def.'s Stmt. of Facts, Ex. D 16.) Plaintiff was injured in February 2001, and CMS placed her on an injury leave of absence from October 24, 2001 to November 1, 2002. (R. 25-1, Def.'s Stmt. of Facts, Ex. D 20-21.) The CMS police had a practice of requiring officers to turn in their equipment while on an extended leave of absence, and on February 7, 2002, Plaintiff's supervisor, Lieutenant Tony Berger, called Plaintiff at home and informed her that she had to turn in her badge and weapon. (R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts ¶¶ 111, 116.) Plaintiff complied with his request that same afternoon. (*Id.* at ¶ 120.) Plaintiff never returned to active duty and retired on November 1, 2002. (*Id.* at ¶¶ 44, 45.)

### C. Plaintiff's Work Performance

Defendant never disciplined or suspended Plaintiff. (R. 42-1, Def.'s Resp. to Pl.'s Add'l Stmt. of Facts ¶ 19.) In Plaintiff's May 2001 performance review, Lt. Berger gave Plaintiff the same grades that Plaintiff gave herself in all categories except in "Human Relations." (R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 153.) Plaintiff graded herself as "Exceeding Expectations" in "Human Relations," but Lt. Berger gave her a grade of "Meeting Expectations." (*Id.*) In Plaintiff's May 2002 performance review, Lt. Berger again gave Plaintiff the same grades that Plaintiff gave herself in all categories except in "Human Relations." (*Id.* at ¶ 154.) Plaintiff graded herself as "Meeting Expectations," but Lt. Berger gave her a grade of "Needing Improvement." (*Id.*)

## II. Procedure For The Promotion Of CMS Officers

### A. The 2001 Lieutenant Position And Interviews

On February 7, 2001, CMS began inviting applications for a vacant police lieutenant position. (R. 42-1, Def.'s Resp. to Pl.'s Add'l Stmt. of Facts ¶ 26.) All CMS officer ranks in 2001 were eligible to apply for the lieutenant position if the officers met the minimum requirements. (R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 52.) CMS posted the request for applications for the lieutenant position on a bulletin board on the third floor of the JRTC outside of the CMS Personnel Office.[2] (*Id.* at ¶ 65.) The last date to apply for the position was February 14, 2001. (*Id.* at ¶ 64.) The posting stated that employees interested in applying for the position should complete application form CMS 100 and mail it to Room 519 of the Stratton Office Building in Springfield, Illinois within the posted time limits. (*Id.* at ¶ 70.) The posting also

---

[2] Plaintiff denies this statement of fact, but her cited documents do not support her denial. The Court, therefore, deems the statement admitted for summary judgment purposes.

3

stated that if applying for the position would result in a promotion and the applicant did not have a current grade for that title, the applicant must submit a yellow competitive promotional application, form CMS 100B, to Room 500 of the Stratton Office Building. (*Id.*) Room 500 of the Stratton Building, the Examining and Counseling Division of CMS, did not have any responsibility or role in the posting of the open lieutenant position or in accepting bid forms from interested applicants. (*Id.* at ¶ 57.) Furthermore, an applicant could request promotion grades at any time regardless of whether there was an actual opening for a particular position. (*Id.* at ¶ 58.)

CMS also used a "bid form" in the promotional process. (*Id.* at ¶ 19.) This form directed applicants seeking a specific open promotion to submit the form to Room 519 of the Stratton Building. (*Id.*) It further informed applicants that if they did not yet have a promotional grade for the open position, they must also complete a CMS 100B yellow form to receive such a grade. (*Id.*) In order to receive an interview, an applicant must have submitted a completed application and a bid form. (*Id.* at ¶ 60.)

Once CMS received the applications in Room 519 of the Stratton Building, it listed the names of the applicants and the date of receipt on a sheet of paper. (R. 42-1, Def.'s Resp. to Pl.'s Add'l Stmt. of Facts ¶ 41.) Chris Valentine, an interviewer for CMS Personnel in Springfield, Illinois, received this list and ensured that the applicants had the appropriate grade. (*Id.*) If the applicant had the appropriate grade, Mr. Valentine called him to schedule an interview. (*Id.*; R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts, Ex. B 21-22.) If Room 519 of the Stratton Building received an application after the posted date, CMS marked the application late in the upper portion of the application form. (R. 42-1, Def.'s Resp. to Pl.'s Add'l Stmt. of Facts ¶ 42.) CMS's stated procedure was to interview only those applicants who submitted their

4

applications by the closing deadline.[3] (R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 77; R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts, Ex. B 25.)

Mr. Valentine was involved in conducting eight interviews for the open lieutenant position on May 2, 2001 at the JRTC. (R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 78.) In October, CMS promoted Luis Davila to the open lieutenant position. (*Id.* at ¶ 105.)

### B. Plaintiff's Application For The Lieutenant Position

On February 13, 2001, Plaintiff completed a CMS 100 application for the position and sent it overnight by certified mail to Room 500 of the Stratton Office Building in Springfield, Illinois.[4] (R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts ¶¶ 90, 92, 94; R. 42-1, Def.'s Resp. to Pl.'s Add'l Stmt. of Facts, Ex. G.) Plaintiff received an "A" promotional grade and qualified for the lieutenant position. (R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 93.) An "A" grade indicates that an applicant is "well qualified" for the position based on the position's minimum requirements. (*Id.* at ¶ 18.) Plaintiff did not receive a response or an interview from CMS regarding her application. (*Id.* at ¶¶ 95-97.)

On the day CMS conducted other interviews, Plaintiff spoke with Chris Valentine. (*Id.* at ¶ 98.) Mr. Valentine told her that Room 519 of the Stratton Building had not received her

---

[3] Plaintiff denies this fact, and in support of her denial she asserts that Mr. Valentine has no personal knowledge of the February 7, 2001 job posting or whether any of the applications were late or on time because he was not the person making those determinations. (*See* R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 77.) The Court acknowledges that Mr. Valentine testified that he did not personally see when the applications came in and would not know when they are late. (R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts, Ex. B 20-21, 51.) Mr. Valentine did, however, testify that he was familiar with the procedures followed in Room 519 of the Stratton Building and that he looked for applications that were not late for inclusion in the interview process. (*Id.* at 20-22, 25.) Accordingly, the Court will consider Mr. Valentine's testimony regarding the normal course of business in Room 519 of the Stratton Building.

[4] Plaintiff objects to this statement of fact on the grounds that it is conclusory. The Court disagrees.

5

application. (*Id.* at ¶ 99.) Mr. Valentine did, however, receive Plaintiff's application. (R. 42-1, Def.'s Resp. to Pl.'s Add'l Stmt. of Facts ¶ 46.)

After the interviews, Plaintiff communicated to Chief Dorothy Campbell that she did not receive an interview for the lieutenant position. (R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 100.) Plaintiff showed Chief Campbell her certified mail receipt, and they faxed a copy of the receipt to Mr. Valentine. (*Id.*) Mr. Valentine explained to Chief Campbell that Plaintiff did not receive an interview because CMS Personnel did not receive an application from her. (*Id.* at ¶ 101.) Plaintiff did not raise the issue again to anyone else at CMS. (*Id.* at ¶ 103.) The parties dispute whether Mr. Valentine told Plaintiff that CMS would grant her an interview for the position if she faxed Mr. Valentine the return receipt card. (R. 42-1, Def.'s Resp. to Pl.'s Add'l Stmt. of Facts ¶ 35.)

### C.     Other applicants

#### 1.     Luis Davila

Luis Davila interviewed for the lieutenant position on May 2, 2001, and CMS promoted him to that position in October of 2001. (R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts ¶¶ 80, 105.) Mr. Davila's bid form, submitted February 9, 2001, indicates that he did not have a promotional grade at the time of his application, but that he had submitted promotional application CMS 100B for a grade. (R. 42-1, Def.'s Resp. to Pl.'s Add'l Stmt. of Facts ¶ 60; R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts, Ex. J.) The parties dispute the facts surrounding Luis Davila's promotional grade application. Plaintiff offers two promotional employment CMS 100B applications submitted to CMS by Luis Davila – one dated February 9, 2001 and the other dated October 8, 2001. (R. 42-1, Def.'s Resp. to Pl.'s Add'l Stmt. of Facts ¶ 51.) Defendant denies that Mr. Davila's application for the lieutenant position, as opposed to his application for

6

a promotional grade, was dated October 8, 2001, but Defendant does not provide any support for its general denial that there are two CMS 100B forms dated in February and October of 2001. (*Id.*)

2. **Hope Swanson-Johnson**

The parties also dispute the facts surrounding Hope Swanson-Johnson's application for the lieutenant position. Plaintiff contends that Defendant denied another female applicant, Hope Swanson-Johnson, an opportunity to interview for the lieutenant position. (R. 42-1, Def.'s Resp. to Pl.'s Add'l Stmt. of Facts ¶ 11.) Ms. Swanson-Johnson testified that she was originally assigned an interview but Mr. Valentine did not interview her. (*Id.* at ¶ 12.) She further testified that Mr. Valentine told her that he would not interview her because she sent the application to the wrong location. (*Id.* at ¶ 13.) Although Ms. Swanson-Johnson believes she correctly sent a bid form and application to Mr. Valentine's office before February 14, 2001, Mr. Valentine informed Ms. Swanson-Johnson that Room 500 of the Stratton Building was the correct address to send the documents for consideration for promotion. (*Id.*) Defendant denies these facts and supports its denial with Mr. Valentine's affidavit.[5]

---

[5] In his deposition, Mr. Valentine stated that he did not have an independent recollection of whether several of the listed applicants, not including Hope Swanson-Johnson, filed their applications or bid forms late. (R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts, Ex. B 74-75.) Mr. Valentine also testified that he did not review any documents other than those in Exhibit E5, which consisted of Mr. Martin's late bid form and an employee bid form from the Department of Corrections. (*Id.* at 70-73.) Instead, Mr. Valentine testified that Assistant Attorney General Hayes told him the names of the individuals who filed their applications or bid forms late. Plaintiff moves to strike this portion of Mr. Valentine's affidavit because it is not based on Mr. Valentine's personal knowledge. Mr. Valentine never testified that he did not have an independent recollection of Hope Swanson-Johnson's, Clarence Cushing's, or Tracey Grantlen's applications or bid forms being late. The Court, therefore, will let the statement stand as to these applicants.

7

Ms. Swanson-Johnson's deposition indicates that she initially sent a yellow form to Room 500 of the Stratton Building before February 14, 2001. (R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts, Ex. C 81-82.) After this first mailing, Ms. Swanson-Johnson testified that she submitted another yellow application and a bid form to Room 519 of the Stratton Building no earlier than February 26, 2001. (*Id.* at 81, 84.) The envelope in which Ms. Swanson-Johnson testified she sent these documents contained a cancelled stamp date of March 3, 2001. (*Id.* at 42, 85.)

## LEGAL STANDARDS

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A party will successfully oppose summary judgment only if it presents "definite, competent evidence to rebut the motion." *Equal Employment Opportunity Comm'n v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (quotations and citation omitted). Courts consider the evidentiary record in the light most favorable to the nonmoving party, and draws all reasonable inferences in her favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

## ANALYSIS

Plaintiff filed a complaint alleging violations of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 on December 30, 2002. Plaintiff alleges Defendant violated these acts by denying her an interview for the lieutenant position, failing to promote her to the lieutenant position, holding her to different standards of performance, and disciplining her because she is a woman. Plaintiff further alleges that Defendant retaliated against her for filing a charge of discrimination by taking away her badge and weapon, disciplining her for no reason, and failing to promote her.

Defendant moves for summary judgment on all claims. First, Defendant argues that it is entitled to judgment as a matter of law on Plaintiff's claims that it held Plaintiff to different standards of performance and gave discipline without reason because these claims are beyond the scope of Plaintiff's charges that she filed with the Equal Employment Opportunity Commission ("EEOC"). Second, Defendant asserts that the Court should dismiss Plaintiff's § 1981 claim because the State of Illinois and its agencies are entitled to immunity under the Eleventh Amendment of the United States Constitution from such claims. Third, Defendant claims that Plaintiff has not established a *prima facie* case of either discrimination or retaliation. Finally, Defendant argues that Plaintiff has not established that Defendant's legitimate, nondiscriminatory reason for not interviewing or promoting Plaintiff was pretextual.

### I. Portions Of Plaintiff's Claim Are Beyond The Scope Of Her EEOC Charge

A plaintiff cannot bring a discrimination claim against a defendant when she failed to include such claims in her EEOC charge. *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). "An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of

9

discrimination." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). This limitation gives an employer notice of its employee's grievance and gives the EEOC and the employer an opportunity for settlement. *Id.*

Plaintiff filed two separate EEOC charges. In the first charge, filed on December 7, 2001, Plaintiff alleged that CMS denied her an interview and promotion for the lieutenant position in 2001 based on her sex. (R. 42-1, Def.'s Resp. to Pl.'s Statement of Facts, Ex. B.) On March 25, 2002, Plaintiff filed a second charge claiming Defendant forced her to surrender her badge and weapon in retaliation against her for filing the first EEOC charge. (R. 42-1, Def.'s Resp. to Pl.'s Statement of Facts, Ex. C.) Defendant argues that Plaintiff's claims that CMS 1) held her to different standards of performance while not grading male officers by the same standards, and 2) disciplined her without giving reasons because of her sex and in retaliation for her first EEOC charge are beyond the scope of either EEOC charge. Plaintiff agrees to dismiss her claim that Defendant retaliated against her by ordering her to surrender her badge and weapon. Plaintiff argues, therefore, that Defendant's argument that these claims fall outside the scope of her second EEOC charge is moot. Plaintiff further claims that her December 7, 2001 EEOC charge wholly supports her remaining claims.

A Title VII plaintiff does not have to allege every fact that forms the basis of each claim in her EEOC complaint because most EEOC charges are completed by laypersons rather than lawyers. *Cheek*, 31 F.3d at 500. The test for determining whether a plaintiff's claims are within the scope of her EEOC charge is whether 1) "there is a reasonable relationship between the allegations in the charge and the claims in the complaint" and 2) "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.* For a reasonable relationship to exist between the allegations in the EEOC charge and the

10

claims in the complaint, "the EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals*." *Id.* at 501 (citing *Rush*, 966 F.2d at 1110) (emphasis in original). Plaintiff fails the first part of the test because being denied an interview and a promotion and being held to different standards of performance or being disciplined involve different standards of conduct. Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's claims that 1) Defendant held Plaintiff to different standards of performance because she is a woman while not grading male officers on the same standards of performance, and 2) Defendant disciplined Plaintiff without giving any reasons in violation of Defendant's policy because of her sex and in retaliation for raising concerns of discrimination.[6]

## II. Defendant Is Entitled To Summary Judgment With Respect To Plaintiff's § 1981 Claim

Defendant argues that it is entitled to immunity from claims pursuant to § 1981 under the Eleventh Amendment of the United States Constitution. Defendant is correct. Eleventh Amendment immunity shields states and their agencies from liability under § 1981. *Hearne v. Board of Educ. of City of Chicago*, 185 F.3d 770, 776 (7th Cir. 1999); *Rucker v. Higher Educ. Aids Bd.*, 669 F.2d 1179, 1184 (7th Cir. 1982). Plaintiff concedes to the dismissal of any § 1981 claims. Accordingly, Defendant's motion for summary judgment is granted with respect to Plaintiff's § 1981 claims.

---

[6] Even if these claims were within the scope of Plaintiff's EEOC charges, there are no genuine issues of material fact supporting either claim. Plaintiff stated in her Additional Statement of Facts that she was never disciplined or suspended. (R. 42-1, Def.'s Resp. to Pl.'s Add'l Stmt. of Facts ¶ 19.) Further, Plaintiff graded herself the same as her supervisor in all categories but one on her yearly performance evaluations in 2001 and 2002. (R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts ¶¶ 153, 154.) Her disagreement with her evaluations does not constitute a materially adverse employment action. *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996) (unfavorable performance evaluations alone do not constitute an adverse employment action).

11

## III. Defendant Is Entitled To Summary Judgment With Respect To Plaintiff's Retaliation Claims

Plaintiff's remaining retaliation claims are that Defendant took her badge and weapon and failed to promote her. Defendant asserts that Plaintiff fails to state a *prima facie* case of retaliation for either allegation. Plaintiff concedes to dismiss her claim of retaliation for being ordered to surrender her badge and weapon, but it is unclear whether Plaintiff is also conceding her claim that Defendant failed to promote her in retaliation for her filing of the first EEOC charge. Consequently, the Court will address each remaining retaliation claim in turn.

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must provide either direct evidence of retaliation or use a burden-shifting approach. *Fyfe v. City of Fort Wayne*, 241 F.3d 597, 601 (7th Cir. 2001). Using the burden-shifting approach, which Plaintiff must because Plaintiff offers no direct evidence of retaliation,[7] Plaintiff must demonstrate that: 1) CMS subjected her to an adverse employment action after she filed her EEOC charge; 2) she was performing her job satisfactorily at the time; and 3) CMS did not subject similarly situated employees who did not file a charge to an adverse employment action. *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 560 (7th Cir. 2004); *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 642 (7th Cir. 2002). If Plaintiff establishes a *prima facie* case, the burden then shifts to Defendant to express a legitimate, non-retaliatory reason for the challenged action. *Russell v. Board of Trs. of the Univ. of Illinois*, 243 F.3d 336, 344 (7th Cir. 2001). Upon such a showing, the burden shifts back to Plaintiff to provide evidence that the stated reason is pretextual. *Id.*

---

[7] Chief Campbell gave Plaintiff the only explanation for the recovery of her badge and weapon. She told Plaintiff that she was enforcing the practice of recovering weapons and credentials as to all officers on extended leaves of absence. (R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts ¶¶ 128, 129.)

### A. Plaintiff Fails To State A *Prima Facie* Case Of Discrimination For Her Claim That Defendant Retaliated Against Her By Failing To Promote Her

Regarding Plaintiff's claim that Defendant failed to promote her in retaliation for filing a charge of discrimination, Plaintiff cannot establish that CMS subjected her to an adverse employment action after she filed her EEOC charge. Plaintiff filed her first EEOC charge on December 7, 2001, *after* CMS promoted Luis Davila to the lieutenant position in October of 2001. Defendant could not have retaliated against Plaintiff for filing a charge that Plaintiff had not yet filed and that Defendant did not know she intended to file the charge. Accordingly, Defendant's motion for summary judgment with regard to this claim is granted.

### B. Plaintiff Fails To State A *Prima Facie* Case Of Discrimination For Her Claim That Defendant Retaliated Against Her By Taking Her Badge And Weapon

Plaintiff also fails to state a *prima facie* case of discrimination for her claim that Defendant retaliated against her by taking away her badge and weapon. While an adverse employment action is not limited to loss or reduction of pay or monetary benefits, not everything that makes an employee unhappy is an actionable adverse action. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). "Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Id.* (quotations and citation omitted). Requiring Plaintiff to turn in her badge and weapon while not on active duty during her injury leave of absence does not constitute an adverse employment action.

Even if this action did amount to an adverse employment action, Plaintiff cannot establish that other similarly situated employees who did not file an EEOC charge were not forced to turn in their badge and weapon. Plaintiff admitted that the CMS police had a practice of requiring officers to turn in their equipment while on extended leaves of absence and that

13

Chief Campbell enforced this practice throughout her tenure as Chief at CMS. (R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts ¶¶ 111, 114.) Plaintiff also admits that Chief Campbell and several other officers, including male officers, surrendered their weapons and badges while on extended leaves of absence. (*Id.* at ¶¶ 127, 130, 133, 137, 138.) Accordingly, the Court grants Defendant's motion for summary judgment with regards to all of Plaintiff's retaliation claims.

## IV.     Defendant Is Entitled To Summary Judgment With Respect To Plaintiff's Discrimination Claims

Defendant argues that Plaintiff cannot establish a *prima facie* case of discrimination for her claims that Defendant denied Plaintiff an interview and failed to promote her because of her sex. Defendant also asserts that it has a legitimate, nondiscriminatory reason for not interviewing or promoting Plaintiff, which Plaintiff cannot demonstrate is pretextual.

### A.     Plaintiff Establishes A *Prima Facie* Case Of Gender Discrimination

Like a claim for retaliation, a plaintiff can establish a *prima facie* case of discrimination by either offering direct evidence of discriminatory intent or by proceeding under the burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1174 (7th Cir. 2002). Plaintiff may only attempt to prove her claim of discrimination by using the burden-shifting method because there is no direct evidence that Defendant discriminated against her.[8] To establish a *prima facie* case of discrimination, Plaintiff must show that: 1) she is a member of a protected class; 2) she applied for and was qualified for the open lieutenant position; 3) Defendant did not grant her an interview or the promotion despite her qualifications; and 4) Defendant promoted and interviewed a member of the nonprotected class who was not more

---

[8] Plaintiff agrees that no one told her that she did not receive an interview because she is a woman. (R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 102.)

qualified. *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003). Of these three elements, only the fourth is at issue.

Plaintiff asserts that she has established her *prima facie* case of discrimination because Luis Davila, the man promoted to the lieutenant position, was not more qualified for the position. Specifically, she asserts that Mr. Davila was less qualified for the position because he failed to obtain an "A" promotional grade before he interviewed for the lieutenant position. In support of her argument, Plaintiff points to Mr. Davila's bid form, which indicates that he did not have a promotional grade at the time he submitted his bid form for the lieutenant position. Plaintiff also points to two promotional grade applications -- one dated February 9, 2001 and the other dated October 8, 2001. From these two applications, Plaintiff infers that Mr. Davila did not receive the appropriate promotional grade before he was interviewed and offered the job, and that he submitted the October paperwork several days prior to his assumption of his lieutenant duties to complete the missing paperwork. Defendant offers no explanation for the October 8, 2001 promotional grade application, and only asserts that Mr. Davila timely submitted his bid form and followed the requirements of the job posting. Because the Court must consider the evidentiary record in the light most favorable to the nonmoving party and draw all reasonable inferences in her favor, the Court finds the presence of the two promotional grade applications sufficient to raise a question of material fact as to Mr. Davila's qualifications for the job. Consequently, the Court finds Plaintiff has established a *prima facie* case of discrimination.[9]

---

[9] Defendant cites *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002) for the proposition that Plaintiff must establish that she was the best applicant for the position to present a prima facie case of discrimination. Defendant's reliance on *Millbrook* is misplaced. *Millbrook* states that "where an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the

15

### B. Plaintiff Has Not Demonstrated That Defendant's Nondiscriminatory Reason For Not Interviewing Or Promoting Plaintiff Was Pretextual

Because Plaintiff has established a *prima facie* case, the burden shifts to Defendant to offer a legitimate, nondiscriminatory reason for its employment decision. *Millbrook*, 280 F.3d at 1174. Once this burden is met, any inference of discrimination disappears, and it is Plaintiff's burden to demonstrate that Defendant's nondiscriminatory reason was pretextual. *Id.* Pretext "means a lie, specifically a phony reason for some action." *Id.* at 1175 (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995)). "A pretext for discrimination means more than an unusual act; it means something worse than a business error; pretext means deceit used to cover one's tracks." *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 730 (7th Cir. 2001) (quotations and citation omitted). To demonstrate pretext Plaintiff must demonstrate that Defendant's nondiscriminatory reason for denying her an interview and the promotion either: "1) has no basis in fact; 2) was not the real reason; or 3) was insufficient to motivate the action." *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 652 (7th Cir. 2001).

Defendant asserts that it denied Plaintiff an interview because she failed to properly submit her application for the lieutenant position when she mailed her application to Room 500 of the Stratton Building instead of Room 519. Plaintiff argues that Defendant's asserted nondiscriminatory reason is pretextual because Mr. Valentine testified that he received Plaintiff's application. Plaintiff also asserts that Defendant's reason is pretextual because Defendant did not follow its stated application procedures by denying Hope Swanson-Johnson

---

plaintiff was clearly better qualified for the position at issue." *Id.* (quotations and citation omitted). Defendant's proffered non-discriminatory reason for denying Plaintiff an interview is not that it selected the most qualified candidate, so evidence of the applicants' competing qualifications is not evidence of pretext or of Plaintiff's failure to establish a *prima facie* case of discrimination.

an interview after she followed Defendant's application procedures and by interviewing Luis Davila even though his bid form did not indicate that he received a grade prior to his interview.[10]

Of these arguments, only Plaintiff's contention that CMS denied Hope Swanson-Johnson an interview after she allegedly followed the appropriate application procedure is relevant to whether Defendant's proffered nondiscriminatory reason had no basis in fact, and was, therefore, pretextual. The mere fact that Mr. Valentine received Plaintiff's application does not negate the fact that Plaintiff sent her application to the wrong room. Although it may seem odd for CMS to deny someone an interview for not sending an application to the correct address even though it may have had notice of the application before the deadline, this is not sufficient to demonstrate the reason was pretextual. *See Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000) (stating that even if a defendant's nondiscriminatory reasons were "mistaken, ill considered or foolish, so long as [the defendant] honestly believed those reasons, pretext has not been shown"). Furthermore, Plaintiff cannot rely on the possibility that Defendant interviewed Mr. Davila without the appropriate promotional grade to demonstrate that Defendant's proffered nondiscriminatory reason is not based in fact because Mr. Davila sent his application to the appropriate location within the stated time limits.

In support of her argument that CMS denied Ms. Swanson-Johnson an interview even though she followed its application procedures, Plaintiff relies on portions of Ms. Swanson-Johnson's deposition. Ms. Swanson-Johnson's deposition testimony does not, however, support Plaintiff's assertion that Ms. Swanson-Johnson correctly followed the application procedures.

---

[10] Plaintiff also argues that Defendant's nondiscriminatory reason was pretextual because Plaintiff allegedly followed the same application procedure in 2001 as she did in 1998, which in 1998 resulted in an interview. Plaintiff does not, however, offer any evidence in the record to support this assertion.

17

Ms. Swanson-Johnson states she sent a "yellow application" to Room 500 of the Stratton Building before February 14, 2001. (R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts, Ex. C 80-81.) The record indicates that the CMS 100B grade promotional application, not the bid form or the CMS 100 application form, was a yellow form. (R. 37-1, Pl.'s Resp. to Def's Statement of Facts, Ex. I.) (stating "If you are applying for a position that would result in a promotion and do not have a current grade for this title, you must submit the yellow competitive promotional application (CMS 100B), to Central Management Services, Room 500 Stratton Office Building, Springfield, IL.[sic] 62706"). Then on February 26, 2001, twelve days after the deadline for applications, Ms. Swanson-Johnson sent another yellow form and a bid form to Room 519 of the Stratton Building. (R. 37-1, Pl.'s Resp. to Def.'s Stmt. of Facts, Ex. C 81-84.) Ms. Swanson-Johnson testified that Mr. Valentine informed her that she did not receive an interview because his office received her application late. (*Id.* at 86.) Ms. Swanson-Johnson also testified that Mr. Valentine informed her that she sent her "application/bid form" to the wrong room and that the correct room was Room 500 of the Stratton Building. (*Id.* at 41.) This is consistent with the testimony above, which indicates that Ms. Swanson-Johnson sent her promotional grade application to Room 519 instead of Room 500.

Even viewing this testimony in the light most favorable to Plaintiff, it supports rather than refutes Defendant's assertion that it denied interviews to applicants who sent application materials in late and to the incorrect room. Plaintiff has not provided any evidence that Defendant's reason for not granting her an interview or a promotion was pretextual. Accordingly, Defendant's motion for summary judgment is granted.

## CONCLUSION

Plaintiff has failed to establish that Defendant's legitimate, nondiscriminatory reason for not interviewing or promoting Plaintiff is pretextual. Plaintiff has also failed to state a *prima facie* case of retaliation. Further, Plaintiff does not state a valid claim for § 1981 relief. There is no genuine issue of material fact and Defendant CMS is entitled to judgment as a matter of law. Accordingly, Defendant's motion for summary judgment is granted.

Dated: November 9, 2004                    ENTERED:

                                           _____
                                           AMY J. ST. EVE
                                           United States District Court Judge